JUSTICE WEBER,
dissenting:
I do not dissent from the legal principles cited and applied in the majority opinion. There is no conflict between the parties as to those legal principles.
My problem is with the required purchase by MDU of 41 megawatts of power in each year. In 1981 MDU entered into an agreement with Basin Electric which obligated MDU to purchase 41 megawatts of power from a particular generating plant in which Basin Electric had *500 an interest, and which also obligated Basin Electric to furnish that 41 megawatts for each of ten years. It is important to note that the Basin Electric power plant did not become operational until June of 1986. Under its determination, the PSC denied MDU the recovery of $1,474,932 in costs it incurred in agreeing to purchase the 41 megawatts of power for one year.
All parties agree that the PSC has the power to disallow unreasonable expenses. My contention is that the PSC improperly used that power in the present case.
The PSC relied upon the expert testifying in behalf of the Montana Consumer Council (MCC). It is critical to keep in mind that the MCC expert conceded that MDU needed its generating resources including the 41 megawatts of power each year contracted for with Basin Electric. The expert conceded that the power was reasonably needed for the forecasted consumer demands of MDU. We may therefore conclude that both the MCC and the PSC agreed that it was both reasonable and necessary for the MDU to enter into the 1981 agreement for the obligated purchase of 41 megawatts each year starting at the completion of construction of the power plant in 1986. That aspect was not considered in the PSC determination nor in the majority opinion.
The MCC expert attacked only the amount which MDU was required to pay in one year for the 41 megawatts of power. The expert emphasized that MDU reduced some of its owned production of power which resulted in an increased cost to the consumer because the contracted price for the 41 megawatts exceeded the cost of production in certain of the MDU units. In addition, the expert testified that in 1985 MDU could have purchased cheaper power from a power pool at a rate substantially less than the price paid for the Basin Electric 41 megawatts. The substance of this testimony was that MDU could have generated power and purchased power at prices cheaper than paid to Basin Electric. As a result, the expert testified that it was proper to disallow $1,474,932 as an unreasonable expense — even though that amount was required by contract to be paid by MDU. That is a “catch-22” position of the worst sort so far as MDU is concerned. The result of this approach is that the PSC in substance commends MDU for obligating itself to purchase the 41 megawatts of power each year for 10 years — because that is a reasonable protection so far as consumer requirements are concerned. The “catch-22” result is that the PSC then says — however, as we review this case in hindsight, we find that in actual fact you didn’t need that power as you anticipated *501 because you could have purchased the power from other sources at a cheaper rate, and we therefore will disallow your required payment as an unreasonable expense.
The ‘ ‘catch-22’ ’ situation is further emphasized by the very nature of the “Pool power.” MDU is a member of Mid-Continent Area Power Pool from which it can acquire power. Its membership in that Power Pool is conditioned upon a contractual arrangement which requires that MDU have its own generating capacity equal to its customers’ demands plus a reserve of 15%. By signing the contract with Basin Electric, MDU has helped to establish its capacity to purchase the pool power by establishing a reserve above projected customer demands of 15%. The penalty result of the PSC determination is that while MDU must have 15% more than is needed for its consumer demands to purchase power from the Power Pool; the PSC will use the cheap power purchased from the Power Pool as a means of eliminating the right of MDU to include the Basin Electric contract price, In addition, pool power is not guaranteed power as is the power which must be furnished by Basin Electric. It is easy to look back and state that pool power was available, but difficult, if not impossible, to look ahead and count upon its availability. Truly a “catch-22.”
As well stated in the majority opinion, the PSC may fix rates which are “just and reasonable. ” As stated by Professor A.J.G. Priest in the majority opinion, a regulatory agency cannot lawfully ignore necessary, fair and reasonable expenses of operation. In addition, as stated by this Court in Montana Dakota Util. Co. v. Bollinger (Mont. 1981), [_Mont__,] 632 P.2d 1086, 38 St.Rep. 1221, in complying with its duty to supervise and regulate, the PSC must scrutinize and review operating expenses to prevent unreasonable costs from being passed to the consumer. Both the majority opinion and the dissent agree that the foregoing standards control. My contention is that the result reached by the PSC is neither just, fair, nor reasonable.
The technique used by the MCC, and accepted by the PSC, has resulted in an artful bypass of a fair and reasonable determination. In order to obtain such a fair and reasonable determination, I believe it essential that the PSC determine whether or not it was fair and reasonable that MDU enter into its 1981 ten year contract with Basin Electric. Such a procedure would require that the PSC make a decision as to whether or not the contract was fair and reasonable before disallowing any of the payments required under the contract. That was not done here. Instead the technique used was to attack the payment *502 required in one year as being an unreasonable expense because power could have been obtained from other sources at a lesser cost. That hindsight was applied five years after the contract had been signed. If that same technique were followed during each of the remaining nine contract years of the MDU-Basin Electric contract, it becomes possible that the PSC could disallow the entire contract purchase price as being an unreasonable expense. This allows an after-the-fact determination on the part of the PSC which is not either fair or reasonable. If the power supply during the ten year contract term is such that the 41 megawatts of power are needed for customers of MDU because power is in short supply, then MDU will be commended, and its purchase price of the 41 megawatts of power will be allowed as a reasonable expense. On the other hand, if power continues to be in surplus during the contract term as was true in 1985, then this would allow the PSC to disregard the required purchase price of the 41 megawatts of power in each year in which there was a surplus of power. Such procedure disregards the nature of the MDU-Basin Electric contract. That contract requires the furnishing of power and the purchase of power in a manner which is actually comparable to an investment by MDU in the construction of its own power generating facility. The payment under the contract should be treated in a manner comparable to the investment in plant, not by the devise used in the present case.
I conclude that the PSC has failed to fix rates that are just and reasonable because it ignored the necessary, fair and reasonable expenses of operation of MDU. I would remand for a redetermination of the rates here involved.
JUSTICES BARZ and HARRISON concur in the foregoing dissent.